# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. 12-cr-30086 |
| RUSSELL S. SCHUETZ, | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter is before the Court for a Report and Recommendation on Defendant Russell Schuetz's Motion to Suppress Evidence Obtained in Violation of Fourth and Fifth Amendments (d/e 19) (Motion).  On August 8, 2012, the Grand Jury indicted Schuetz on seven counts of Transfer of Obscene Material to a Minor, in violation of 18 U.S.C. § 1470.  Indictment (d/e 15).  The Indictment also included a notice of forfeiture for two laptop computers owned by Schuetz.  Schuetz filed the Motion on September 10, 2012.

The Court conducted an evidentiary hearing on the Motion on October 11, 2012.  The Government appeared by Assistant United States Attorney Gregory K. Harris.  The Defendant Russell Schuetz appeared in

person and by his attorney Assistant Federal Public Defender Daniel J. Hillis. After carefully considering all of the submissions of the parties, the evidence presented at the hearing, and pursuant to 28 U.S.C. § 636(b)(1)(B), this Court recommends that the Motion to Suppress be ALLOWED in part and DENIED in part.

## STATEMENT OF FACTS[1]

On July 10, 2012, at approximately 6:30 a.m., seven law enforcement officers executed a search warrant (Warrant) at Schuetz's residence located at 6851 N. Cotton Hill Road, Springfield, Illinois (Residence). Department of Homeland Security Immigration and Customs Enforcement Service Special Agents Eric Bowers and Dwayne Haferkamp participated in the execution of the Warrant. The Residence was owned by Schuetz's mother, Roberta Schuetz (Mrs. Schuetz). Schuetz, two grandsons of Mrs. Schuetz's (Schuetz's nephews), and a great-grandson of Mrs. Schuetz also lived at the Residence.

Schuetz, Mrs. Schuetz, and one of her grandsons were home at the time that officers arrived to execute the Warrant. Schuetz was sleeping in his bedroom in the lower level of the Residence. Haferkamp and another officer entered Schuetz's bedroom with firearms drawn. The officers woke

---

[1] This Report and Recommendation has been prepared without the benefit of a transcript of the hearing.

Schuetz and had him dress. Bowers entered the bedroom at this time. Bowers escorted Schuetz upstairs from the bedroom to the dining room on the main level.

Once in the dining room, Bowers and Haferkamp began questioning Schuetz while other officers searched the Residence. Mrs. Schuetz was also present in the dining room. Agents Bowers and Haferkamp recorded the questioning. Government's Response to Defendant's Motion to Suppress (d/e 21) (Response), Exhibit 2, CD Recording. Schuetz acknowledged that he knew that the conversation was being recorded. Bowers and Haferkamp then presented Schuetz with a one page document entitled Statement of Rights and Waiver. Response, Exhibit 3, Statement of Rights and Waiver (Waiver). The upper portion of the Waiver set forth Schuetz's Miranda rights. The lower portion contained a written waiver of those rights. Bowers read each right aloud and Schuetz initialed each right to indicate that he understood each right. Bowers asked Schuetz if he understood these rights and whether he wanted to waive his rights and speak to him. Schuetz stated that he understood his rights. Schuetz asked why the officers wanted to speak to him. Bowers told him that they were executing a warrant in connection with a child exploitation investigation. Bowers then signed the Waiver, and the officers signed as witnesses and dated and timed the execution of the document as July 10,

2012 at 6:34 a.m.  Bowers again told Schuetz that he could choose to stop answering questions at any time.  See CD Recording, at 0:15-4:00, 36:00-36:10; Waiver.

After Schuetz executed the Waiver, Bowers showed Schuetz a copy of the Warrant and began the questioning.  Schuetz stated his full name, but could not spell his middle name, Philemon.  Schuetz stated that he never used the name and that the name was spelled exactly as it is spelled in the Bible.  During the initial questioning, Mrs. Schuetz volunteered background information about matters such as Schuetz's prior marriages, divorces, births of his children, his past employment, and his former residences.  Schuetz had been divorced twice and had two children.  He had worked for several years for various McDonald's restaurants.  He stated that he had been an assistant manager at the time he left in fall of 2011.  He had also worked at other jobs, including several years with General Dynamics.  Later during the questioning, Schuetz told officers that he graduated high school and took some college courses through McDonald's management training program.  He also stated that he had been diagnosed with bipolar disorder and received inpatient psychiatric treatment on two occasions.  He was not currently taking any medications for his mental disorder.  See CD Recording, at 5:00-26:10, 97:00-99:00, 111:40-119:40.

Schuetz's sister testified at the hearing that Schuetz had cognitive deficits. She testified that he took special education classes in high school, but she agreed that he received a high school diploma. She testified that Schuetz was not an assistant manager at McDonald's and never held a supervisory position at McDonald's. She testified that he worked for years at McDonald's restaurants. She was not present at the time of the questioning and did not provide this information to Bowers or Haferkamp.

About fourteen minutes into the questioning, Bowers left the dining room briefly. While Bowers was absent, Mrs. Schuetz asked whether she needed to call one of her lawyers. Haferkamp told her that he could not advise her. Schuetz told her that she needed to have a lawyer. After Mrs. Schuetz left the dining room, Bowers returned. Haferkamp told Bowers that Mrs. Schuetz had asked whether she needed a lawyer and summarized his response. Bowers stated that she was free to consult with an attorney and reiterated to Schuetz that he was free to consult with an attorney. The questioning continued. CD Recording, at 14:15-15:25.

During the questioning, Schuetz admitted engaging in Internet computer chats with individuals who identified themselves to be children 16 years of age and under, primarily girls, but some boys. Schuetz acknowledged that during these chats he transmitted streaming video of himself while he exposed his genitalia and masturbated. During the

interrogation, officers presented Schuetz with transcripts of numerous chats and captured images from streaming videos of Schuetz exposing himself and masturbating.  Schuetz acknowledged that the transcripts were accurate transcripts of chats that he conducted and that the pictures were accurate captured images from videos that he transmitted to the individuals with whom he was chatting.  Schuetz also allowed the officers to take photographs of his exposed stomach.  Schuetz had a hernia that protruded at his navel in a unique manner.  See Motion, Exhibit 4, Photographs.

About forty-seven minutes into the CD Recording, Mrs. Schuetz interrupted the questioning briefly.  At this time, Schuetz asked if he could talk to his mother.  Bowers said yes.  Schuetz told Mrs. Schuetz that he needed a lawyer.  She told him that he would have to get a lawyer himself and she could not get one for him.  Schuetz responded, "Okay."  CD Recording, at 47:13-47:14.  Bowers then asked Schuetz whether he wanted to keep speaking with the officers or if he wanted to stop and consult with an attorney.  Schuetz said, "Privately, yes sir."  CD Recording, at 48:08-48:10.  Schuetz asked his mother to leave to give them some privacy.  She left after a few minutes.  Bowers again asked Schuetz whether he wanted to keep speaking with the officers or if he wanted to stop and consult with an attorney.  CD Recording, at 51:57-52:06. Schuetz said he wanted to do whatever he could to get himself help and to continue

to help the officers in any way in the hope of receiving some lenience. CD Recording, at 52:06-52:30. The questioning continued.

During the remainder of the questioning, Schuetz stated several times that he wanted to cooperate with the officers in order to try to help himself. E.g., CD Recording, at 54:40-55:20. During the questioning, Schuetz gave the officers written authorization to take over his Yahoo email account. Response, Exhibit 4, Consent Form. Bowers ended the questioning at 8:48 a.m. CD Recording, at 137:30-50. The execution of the Waiver and the questioning that followed took approximately two hours and twenty minutes.

The officers seized material during the search, including computers, a notebook that contained some handwritten notes, and some of Schuetz's medical records.[2]

## ANALYSIS

Schuetz moves to suppress the notebook and medical records and all evidence secured during the officer's questioning of Schuetz on July 10, 2012. The Response stated that the Government does not oppose suppression of the medical records. Response, at 12. Counsel for the

---

[2] Schuetz raised for the first time at the Motion hearing that the officers seized some VHS video tapes. Schuetz did not ask for suppression of the tapes in the Motion. The question of the seizure of the tapes is not before the Court. Counsel for the government stated at the hearing that the tapes will be reviewed and returned if they have no evidentiary value.

Government stated at the hearing that the Government does not oppose suppression of the notebook. The Court therefore recommends that these items should be suppressed. The only issue is the evidence secured during the questioning.

A person may not be compelled to incriminate himself. U.S. Const. Amend. V. The Supreme Court has determined, in <u>Miranda v. Arizona</u>, that in order to protect this right, law enforcement officers conducting a custodial interrogation must first warn the suspect of his rights. The officer must warn the suspect that he has a right to remain silent, and a right to be represented by counsel at any interrogation. <u>Miranda v. Arizona</u>, 384 U.S. 436, 474 (1966). An interrogation must cease if the suspect invokes his rights at any time during the interrogation. <u>Edwards v. Arizona</u>, 451 U.S. 477, 485-86 (1981). A person is subject to a custodial interrogation if, under the circumstances, a reasonable person in the defendant's position would believe that he or she was not free to go. <u>United States v. Lennick</u>, 917 F.2d 974, 977 (7th Cir. 1990).

The person subject to the interrogation, however, may also waive his rights and agree to answer questions. <u>North Carolina v. Butler</u>, 441 U.S. 369, 372-76 (1979). A suspect who has waived his right to counsel may reassert that right and stop questioning at any time during an interrogation. <u>Edwards v. Arizona</u>, 451 U.S. at 485-86. Officers may, however, continue

questioning if the suspect's reference to counsel is ambiguous and equivocal. The questioning may continue if a reasonable officer had understood that the suspect <u>might</u> be invoking his right to counsel. <u>Davis v. United States</u>, 512 U.S. 452, 459 (1994) *(emphasis added)*.

The evidence shows that Schuetz was subjected to a custodial interrogation. Seven law enforcement officers entered the Residence to execute the Warrant. They woke Schuetz with weapons drawn. They had him dress and escorted him to the dining room and started questioning him. They never left him alone thereafter. A reasonable person under these circumstances would have believed that he was not free to go. <u>See e.g.</u>, <u>Sprosty v. Buchler</u>, 79 F.3d 635, 641 (7th Cir. 1996). The Government's arguments to the contrary are not persuasive.

The officers properly warned Schuetz of his <u>Miranda</u> rights and he waived those rights in writing.[3] The officers presented Schuetz with the

---

[3] Schuetz states in a footnote that the officers knew at the time that Schuetz may be incompetent because he has a low IQ. <u>Motion</u>, at 1 n.1. The argument is not developed and so is waived. <u>Weinstein v. Schwartz</u>, 422 F.3d 476, 477 n.1 (7th Cir. 2005). Moreover, the evidence supports the conclusion that the officers believed he was competent. The CD Recording reveals that Schuetz was lucid during the entire encounter. Schuetz calmly conversed with the officers and rationally decided to cooperate in order to help himself. He reported a history of bipolar disorder, but he did not present any manifestations of this disease during the encounter with the officers. Schuetz's sister testified at the hearing that Schuetz had cognitive impairments. She testified that his IQ was in the mid 70s. The CD Recording, however, does not reveal any cognitive deficits other than an inability to spell his middle name. Schuetz's stated employment history and his ability to complete college course work further demonstrated to the officers that he had the intellectual ability to understand what was happening. The evidence shows that the officers had no reason to doubt that Schuetz was competent at the time of the questioning.

Waiver.  Bowers read each right aloud, and Schuetz initialed each right as it was read.  Schuetz then signed the Waiver.  Schuetz furthermore repeatedly stated that he wanted to cooperate to perhaps get some leniency.  The waiver was knowing and voluntary.

Schuetz argues that he reasserted his right to counsel during the questioning.  He argues that he invoked his right to counsel when Mrs. Schuetz asked if she needed to call one of her lawyers.  Schuetz argues that Mrs. Schuetz was inquiring about getting a lawyer for Schuetz.  Schuetz argues that she must have been asking about a lawyer for Schuetz because she did not need a lawyer.   Mrs. Schuetz was not a suspect and was not questioned.  Mrs. Schuetz, however, owned the Residence that was being searched.  She could have been worried about potential liability for contraband found on her property.  She, therefore, may have been concerned about her personal situation.  The officers, therefore, could believe that she was inquiring about contacting a lawyer for herself.

Furthermore, Schuetz responded by telling her that she needed a lawyer.  Schuetz understood her to be asking about whether she needed a lawyer, not him.  Given Schuetz's interpretation of his mother's question, a reasonable officer under the circumstances could reasonably conclude that the discussion concerned whether Mrs. Schuetz needed a lawyer, not Schuetz.  Even so, Bowers reminded Schuetz that he was free to speak

with a lawyer. Schuetz did not ask for a lawyer or otherwise indicate that he wanted to stop and consult with an attorney at that point. Thus, the discussion at this point in the questioning did not constitute an unequivocal invocation of Schuetz's right to counsel. The officers did not violate his rights by continuing the questioning.

Schuetz also argues that he invoked his right to counsel when he later told his mother that he needed a lawyer. She told him that he would have to get his own lawyer. Bowers immediately asked Schuetz if he wanted to stop the questioning and consult with a lawyer. Schuetz stated that he wanted to continue and wanted to cooperate with the officers. Schuetz did not unequivocally invoke his right to counsel. In both of these instances, the officers specifically reminded Schuetz of his right to counsel. Both times Schuetz continued with the questioning, and the second time he explicitly stated that he wanted to continue answering the officers' questions. A reasonable officer would conclude under these circumstances that Schuetz was not invoking his right to counsel. The request to suppress the evidence secured during the questioning should be denied.

Schuetz argues that his declaration to his mother that he needed a lawyer constituted an unequivocal invocation of his right to counsel. He argues that the officers should have immediately stopped questioning him

rather than asking him if he wanted to stop and speak to a lawyer or continue. The Court disagrees. Schuetz told his mother that he needed a lawyer. That statement is, at best, equivocal. He could have meant that he wanted to consult with a lawyer before proceeding with any more questioning, or he could have meant that he knew that he would eventually need a lawyer to represent him after the questioning was completed. See United States v. Posada-Rios, 158 F.3d 832, 867 (5th Cir. 1998). Given the ambiguity, the officers properly stopped questioning Schuetz and asked what he meant, did he want to stop the questioning and talk to a lawyer or not. Schuetz stated he wanted to continue with the questioning. The officers' actions were proper.[4]

Schuetz's counsel argued at the hearing that the Government waived any objection to suppressing the photographs of his stomach. Schuetz's counsel argued that Schuetz moved to suppress the photographs, but the Government failed to respond to that portion of the Motion. The Court disagrees. The Motion argues that the photographs should be suppressed because the photographs were part of the evidence secured during

---

[4]The Government notified the Court that, in a prior case, the Court of Appeals did not believe Bowers' testimony in a suppression hearing, and even referred to certain statements as "false testimony." United States v. Slaight, 620 F.3d 816, 818 (7th Cir. 2010). Schuetz argued the Court of Appeal's comment in Slaight to impeach Bowers' credibility. Bowers' veracity is not a central issue in this case because his testimony is fully corroborated by the CD Recording. Schuetz's counsel agreed that the CD Recording was accurate.

improper questioning in violation of Schuetz's right to counsel.  <u>Motion</u>, at 12-13.  The Motion makes no argument with respect to the photographs that is independent of the argument regarding Schuetz's right to counsel during the questioning.  The Government responded to the argument in the Motion by showing that Schuetz waived his rights before the questioning began and did not invoke his rights during the questioning.  The Government, thus, addressed the issues raised by the Motion regarding the photographs.  The Government did not waive any issue regarding the photographs.

WHEREFORE this Court recommends that Defendant Russell Schuetz's Motion to Suppress Evidence Obtained in Violation of Fourth and Fifth Amendments (d/e 19) should be ALLOWED in part and DENIED in part.  The medical records and the notebook seized during the execution of the Warrant should be suppressed.  The remainder of the Motion should be DENIED.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after being served with ECF copy of this Report and Recommendation.  <u>See</u> 28 U.S.C. § 636(b)(1).  Failure to file a timely objection will constitute a waiver of objections on appeal. <u>See</u> <u>Video</u>

Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986); 28 U.S.C. § 636(b)(1); Local Rule 72.2.

ENTER: October 17, 2012

   <u>  s/ Byron G. Cudmore   </u>
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE
